QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

Kevin S. Reed
51 Madison Avenue, 22nd Floor,
New York, New York 10010-1601
Tel: (212) 849-7000
Fax: (212) 849-7100

Attorneys for Plaintiff, Heathfield Capital Limited

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------x
: 
In re: : Case No. 09-10371-SMB
: 
: Chapter 7
MARC S. DREIER, :
: 
Debtor. :
: 
------------------------------------------x
HEATHFIELD CAPITAL LIMITED, :
: 
Plaintiff, : Adversary No. _____
: 
- against - :
: 
MARC S. DREIER, :
: 
Defendant. :
: 
------------------------------------------x

**COMPLAINT FOR DETERMINATION THAT DEBT IS NON-DISCHARGEABLE**

TO THE HONORABLE STUART M. BERNSTEIN
CHIEF UNITED STATES BANKRUPTCY JUDGE:

Plaintiff, Heathfield Capital Limited (the "Heathfield"), by its undersigned counsel, hereby files this Complaint (the "Complaint") for determination that debt of chapter 11 debtor, Marc S. Dreier ("Dreier"), owing to it is non-dischargeable. In support of the Complaint, Heathfield respectfully states and alleges as follows:

## PRELIMINARY STATEMENT

1. The Elliot Entities (as defined below) are victims of a massive fraud that Dreier perpetrated over a number of years. Beginning in or about 2004 and continuing until his arrest in December 2008, Dreier was the mastermind behind a plot designed to defraud innocent purchasers through the sale of forged and fictitious securities. In the end, purchasers of these fictitious securities, including the Elliott Entities, were defrauded of approximately $400 million. The magnitude of the deception and fraud in Dreier's criminal enterprise attracted nationwide publicity. Ultimately, Dreier pled guilty to inter alia, fraud and conspiracy related to the sale of forged and fictitious securities.

2. The Elliott Entities were among the entities that Dreier defrauded. As a result of Dreier's admitted fraudulent scheming, they were wrongfully divested of approximately $100 million. Accordingly, the Court should find that the debts owing to the Elliott Entities are non-dischargeable under section 523(a) of title 11 of the United States Code (the "Bankruptcy Code").

## PARTIES

3. Plaintiff Heathfield is an exempted company with limited liability organized and existing under the laws of the Cayman Islands, with its registered office located in Grand Cayman.

4. Dreier is a citizen of the State of New York, formerly residing at 151 East 58th Street, Apartment 34C, New York, New York 10022. At all relevant times, Dreier was the founder, sole member and managing partner of Dreier LLP ("Dreier LLP").

5. Non-party Elliott International, L.P. ("Elliott International") is a limited partnership organized and existing under the laws of the Cayman Islands, with its principal office located in Grand Cayman. Non-party Elliott Associates, L.P. ("Elliott Associates") is a limited

partnership organized and existing under the laws of the State of Delaware with its principal office located at 712 Fifth Avenue, New York, New York 10019. Elliott International and Elliott Associates are collectively referenced herein as the "Elliott Entities." Pursuant to an assignment agreement, as described below, the Elliott Entities assigned all right, title and interest in their claims against Dreier and Dreier LLP to Heathfield.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. §157(b)(2)(I).

7. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a).

8. The statutory predicates for the relief requested herein are sections 523(a)(2), (4), and (6) of the Bankruptcy Code.

## BACKGROUND

### A. Dreier's Initial Contacts with the Elliott Entities

9. On or about October 11, 2008, Dreier contacted a lawyer who Dreier knew to be a long-time outside counsel to the Elliott Entities. Dreier described what he represented to be short-term notes issued by a large real estate concern that were available for sale at a discount by several small hedge funds (the "Hedge Fund Sellers") that were in need of liquidity. He asked the lawyer to transmit the opportunity to the Elliott Entities. Dreier indicated that he, under the auspices of Dreier LLP, represented both the issuer of the notes and the Hedge Fund Sellers. As requested by Dreier, the lawyer subsequently forwarded the opportunity to the Elliott Entities.

10. During the ensuing two weeks, Dreier negotiated an apparent sale to the Elliott Entities of the purported notes allegedly held by the Hedge Fund Sellers. Throughout those negotiations, Dreier represented that the notes had been issued by Solow Realty and Development

Company, LLC ("Solow Realty") and guaranteed by Solow Realty's affiliates, Solow Building Company, LLC ("Solow Building") and Solow Management Corp. ("Solow Management") (collectively, the "Solow Entities"). Dreier further represented that (i) at all relevant times, he served as legal counsel to Solow Entities and their principal, Sheldon Solow, and to the Hedge Fund Sellers, (ii) he was authorized to act on behalf of the Solow Entities, Mr. Solow and the Hedge Fund Sellers in connection with the contemplated transactions, (iii) the notes offered by the Hedge Fund Sellers were genuine obligations and evidenced short-term loans made to Solow Realty; (iv) due to the ongoing credit crisis and investor redemptions, the Hedge Fund Sellers needed to sell the notes quickly to raise capital; and (v) the Solow Entities did not want to repurchase the notes because they were deploying their existing cash to pursue "high return" distressed real estate opportunities.

11. In addition, Dreier represented that (i) Dreier had run a notes program for the Solow Entities for approximately 5 years; (ii) the Solow Entities' notes program was approximately $450 million in size and; (iii) other prominent hedge funds, some of which Dreier identified, held notes issued through the notes program. A representative of the Elliott Entities contacted one of the other hedge funds identified by Dreier, and that fund confirmed that it in fact held what it believed to be Solow-issued notes. Dreier also arranged for an Elliott Entities representative to speak with someone purporting to represent one of the Hedge Fund Sellers.

12. The Elliott Entities understood based on publicly available sources, including news reports and the Dreier LLP website, that Dreier served as counsel to one or more of the Solow Entities.

13. In mid-to-late October 2008, Dreier, in furtherance of his negotiations with the Elliott Entities, provided the Elliott Entities with what were represented to be the Hedge Fund Sellers' notes and the underlying loan agreements, as well as purported financial statements of the

Solow Entities. The purported financial statements included an audit letter on the letterhead of a prominent accounting firm and bore what purported to be the signature of a senior auditor in that firm.

14. Additionally, on or about October 23, 2008, Dreier arranged for representatives of the Elliott Entities to speak about the notes with an individual whom Dreier purported to be Steven M. Cherniak, CEO of each of the Solow Entities. The individual acknowledged the existence of the notes Dreier was marketing and confirmed Dreier's representation that the Solow Entities did not want to buy the notes back because they were using their cash to invest in distressed real estate opportunities. The Elliott Entities also were provided with a purported telephone number and e-mail address for "Mr. Cherniak."

### B. The Note Purchase Transactions

15. The Elliott Entities, relying upon Dreier's documentation, representations and conduct, agreed to purchase the supposed Hedge Fund Sellers' purported notes and one additional purported note supposedly owned by an additional hedge fund (collectively, the "Promissory Notes"), as set forth below.

16. On or about October 24, 2008, the Elliott Entities purchased the following purported notes from the Hedge Fund Sellers by executing a purchase and sale agreement with respect to each one:

- 11.5% Term Note due March 28, 2009, issued to Archery Capital, LLC ($25 million face value);
- 11.0% Term Note due March 29, 2009, issued to Four Winds Holdings, Inc. ($20 million face value);
- 11.5% Term Note due June 25, 2009, issued to MEA Properties, Inc. ($25 million face value);
- 11.5% Term Note due June 30, 2009, issued to Archery Capital, LLC ($40 million face value).

17. On or about November 6, 2008, the Elliott Entities purchased the following additional note purportedly issued and guaranteed by the Solow Entities by executing a purchase and sale agreement (collectively, with the purchase and sale agreements referenced in paragraph 16 above, the "Purchase and Sale Agreements"):

- 11.5% Term Note due June 29, 2009, issued to Bennington International Holdings, Ltd. ($25 million face value).

Prior to purchasing this note, representatives of the Elliott Entities, using a telephone number provided by Dreier, spoke with a person who purported to be the principal of Bennington International Holdings, Ltd. and confirmed that Bennington International Holdings, Ltd. held the note and was offering it for sale.

18. The purchase price for the Promissory Notes, which totaled $99.85 million, was wired by the Elliott Entities, at Dreier's direction, into a Dreier LLP account at JP Morgan Chase Bank.

19. In exchange, Dreier, purportedly acting on behalf of the Solow Entities, Mr. Solow and the Hedge Fund Sellers, provided the Elliott Entities with, among other things, (i) re-issued notes in favor of the Elliott Entities (the "Re-Issued Notes," attached hereto as Exhibit A, and together with the Promissory Notes, the "Notes"); (ii) a personal guaranty by Mr. Solow, purportedly executed by him, which guaranteed Solow Realty's obligations under the Re-Issued Notes and related documents (original and amended attached hereto as Exhibit B); (iii) a letter containing additional representations purportedly executed by the Solow Entities (attached hereto as Exhibit C), (iv) a security agreement executed by Dreier (original and amended attached hereto as Exhibit D); and (v) legal opinions by Dreier LLP (attached hereto as Exhibit E). Dreier also provided the Elliott Entities with a purported Secretary's Certificate for each of the Solow Entities, each of which bore the supposed signatures of the corporate secretary and Mr. Cherniak and each of which appended a

purported Board of Directors (or equivalent) resolution, apparently bearing the signatures of Mr. Cherniak and/or Mr. Solow, authorizing the execution of the Solow Letter.

### C. The Re-Issued Notes

20. Each of the Re-Issued Notes, payable to the Elliott Entities, is purportedly executed by the Solow Entities, and bears what purports to be the signature of Steven M. Cherniak, the Chief Executive Officer of each of those entities. The Re-Issued Notes, delivered to the Elliott Entities by Dreier, purport to evidence the obligations of Solow Realty to pay to the Elliott Entities the aggregate sum of $135 million, plus interest, and state that Solow Building and Solow Management have "unconditionally guaranteed all amounts due under or in respect of this Note when and as the same shall become due and payable."

### D. The Solow Guarantee

21. Dreier provided the Elliott Entities with a personal guaranty purportedly executed by Mr. Solow (the "Solow Guaranty"). In the Solow Guaranty, which was first executed on October 24, 2008 and then amended on November 6, 2008 to include the additional note purchased at that time, Mr. Solow purportedly guaranteed "the prompt and full payment and performance of the indebtedness and obligations" owed to the Elliott Entities, agreed to "be liable … as a primary obligor," and represented that "this Guaranty is duly authorized and valid, and is binding upon and enforceable against [Mr. Solow]" (¶ 14(b)); that "[Mr. Solow] has read … the provisions contained in the Loan Documents" (¶ 14(g)); and that "[Mr. Solow] is not aware of any reason why [Solow Realty] will not be able to meet its obligations under the Notes and Loan Agreements" (¶ 14(i)) (collectively, the "Solow Guaranty Representations").

22. In addition, Dreier provided the Elliott Entities with letters dated October 24, 2008 and November 6, 2008 (together, the "Solow Letters"), purportedly executed by Solow Realty,

Solow Building and Solow Management, containing the representations set forth below and bearing what purports to be the signature of Mr. Cherniak.

### E. The Solow Letter

23. The Solow Letter represents that Solow Realty "consents to the sale, transfer and assignment of the Notes," and that Solow Realty, Solow Building and Solow Management have "full power and authority to execute, deliver and perform this Letter Agreement and to carry out its obligations hereunder," that "[t]he execution and delivery of this Letter Agreement and the consummation of the transactions contemplated hereunder have been duly authorized," that [t]he representations and warranties of [Solow Realty] set forth in each of the Loan Agreements were true and correct in all respects as of the date made and are true and correct in all respects as of the date hereof"; that Solow Realty "has delivered to Elliott each of the financial statements, reports and schedules with respect to the Borrower and the Guarantors"; and that these financial statements, reports and schedules were "prepared in accordance with generally accepted accounting principles … and present fairly the financial condition and results of operation of the Borrower and its consolidated subsidiaries or the Guarantors … and are accurate in all respects with respect to the subject matter hereof" (collectively, the "<u>Solow Letter Representations</u>").

### F. The Dreier LLP Legal Opinions

24. Dreier also provided the Elliott Entities with Dreier LLP legal opinions (the "<u>Legal Opinions</u>") signed by Dreier, as purported counsel to Solow Realty, Solow Building, Solow Management, Mr. Solow and the Hedge Fund Sellers. In the Legal Opinions, Dreier represented:

> 6. (a) The Purchase Agreement has been duly executed and delivered by the Sellers and constitutes the valid, legal and binding obligation of the Sellers, enforceable against them in accordance with its terms, (b) the Letter Agreement has been duly executed and delivered by the Borrower and the Guarantors and constitutes the valid, legal and binding obligations of the Borrower and the

> Guarantors, enforceable against them accordance with its terms, (c) the Guaranty has been duly executed and delivered by Sheldon Solow and constitutes the valid, legal and binding obligation of Sheldon Solow, enforceable against him in accordance with its terms, and (d) the Security Agreement [see below] has been duly executed and delivered by Marc Dreier and constitutes the valid, legal and binding obligation of Marc Dreier, enforceable against him in accordance with its terms... (the "<u>Legal Opinion Representations</u>").

### G. The Security Agreement

25. In order to induce the Elliott Entities to consummate this transaction, Dreier provided them with a security agreement (the "<u>Security Agreement</u>") executed by Dreier in his personal capacity. The Security Agreement, dated October 24, 2008 and amended as of November 6, 2008, grants the Elliott Entities a continuing, first priority security interest in all of Dreier's right, title and interest in certain works of art as security for the prompt and full payment of the Re-Issued Notes, the performance of all other obligations of Solow Realty under the loan agreements, and the performance of Mr. Solow under the Solow Guaranty.

### H. Dreier's Fraud is Revealed

26. On or about November 12, 2008, Dreier contacted the Elliott Entities about an opportunity to purchase from an Icelandic fund a note purportedly issued by Bell Canada Enterprises ("<u>BCE</u>") and guaranteed by the Ontario Teachers Pension Plan, with a face value of $44.7 million.

27. On or about November 20, 2008, Dreier arranged a telephone call between representatives of the Elliott Entities and a person who purported to be a representative of the Ontario Teachers Pension Fund named Bill Walters. During that call, "Mr. Walters" stated that his email address was *wwalters@otprivatecapital.com*.

28. On or about November 21, 2008, Dreier arranged a telephone call between representatives of the Elliott Entities and a person who purported to be a representative of BCE,

named Elizabeth Warren. During that call, "Ms. Warren" stated that her email address was *ewarren@b-centerprises.com*.

29. On or about November 21, 2008, a representative of the Elliott Entities tried to reach "Ms. Warren" but was informed by BCE that it has no employee named Elizabeth Warren.

30. On or about November 21, 2008, alarmed by Dreier's use of apparent imposters, the Elliott Entities traced the registrations of the domain names used in the email addresses they had been provided by "Mr. Walters" and "Ms. Warren." The traces revealed that those domain names – *otprivatecapital.com* and *b-centerprises.com* – had been registered by Dreier on November 19 and 20, 2008, respectively. The Elliott Entities subsequently determined that the domain name used in the email address provided to them for "Mr. Cherniak" had also recently been registered by Dreier and that the telephone number provided for "Mr. Cherniak" was tied in to the voice mail system at Dreier LLP.

31. Also on or about November 21, 2008, a representative of the Elliott Entities spoke by telephone with Mr. Solow and his attorney and sent them via facsimile copies of the Re-Issued Notes and the Solow Guarantee. Mr. Solow advised that (i) Solow Realty had not issued the Re-Issued Notes, nor had the other Solow Entities guaranteed them; (ii) the note program that supposedly encompassed the Promissory Notes did not exist; (iii) Mr. Solow had neither previously seen nor executed the Solow Guarantee, which contained a signature and address that were not his; and (iv) neither the Solow Entities nor Mr. Solow had been represented by Dreier or Dreier LLP in at least four to six months.

32. Later on November 21, 2008, the representative of the Elliott Entities referenced immediately above spoke by telephone with Mr. Solow's attorney and Mr. Cherniak. Mr. Cherniak confirmed that (i) he had not previously seen nor executed the Re-Issued Notes; (ii) Solow

Realty had not issued the Re-Issued Notes, nor had the other Solow Entities guaranteed them; (iii) the note program that supposedly encompassed the Promissory Notes did not exist; and (iv) he had never dealt with the Elliott Entities regarding the Promissory Notes or the Re-Issued Notes.

33. On or about December 3, 2008, Dreier was arrested in Toronto, Canada, by Canadian law enforcement authorities, and charged with the offense of "personation with intent," which applies to "[e]very one who fraudulently personates someone living or dead . . . with intent to obtain any property or an interest in any property" and is generally used to prosecute fraud crimes.

34. On or about December 8, 2008, Dreier returned to New York and was arrested by federal law enforcement authorities on a charge of securities fraud. Dreier's fraud against the Elliott Entities was part of a wider fraudulent scheme that has been at least partially described in (i) superseding criminal indictment 09 Cr. 085 (JSR) (the "Superseding Indictment"), returned against Dreier by a grand jury in the Southern District of New York, and (ii) a civil complaint filed against Dreier in the Southern District of New York by the United States Securities Exchange Commission in *SEC v. Dreier*, 08 Civ. 10617 (MGC).

35. On May 11, 2009, Dreier pled guilty, without a plea agreement, to Counts One through Eight of the Superseding Indictment. At his plea proceeding, Dreier admitted, in part, that:

> From in or about 2004 through in or about December 2008, I engaged in a scheme to issue and/or sell fictitious promissory notes purportedly issued by companies located in the United States and Canada.
>
> Beginning in or about 2004, I falsely represented [to] various hedge funds and investment funds and a few individual investments that I had authority to issue promissory notes on behalf of a real estate development company headquartered in New York.
>
> In order to convince the funds that these notes were legitimate, I supplied the funds with fake financial statements that purported to be issued by the real estate developer. In some instances, I also claimed that the fake financial statements were audited by an accounting firm located in New York.

(May 11, 2009 Tr. 14-15).

### I. The Involuntary Bankruptcy Filing

36. On January 26, 2009, an involuntary petition was filed against Dreier by petitioning creditors Sheila M. Gowan, Trustee for Chapter 11 Estate of Dreier LLP, Wachovia Bank, N.A. and Steven J. Reisman, Post-confirmation Representative of the Bankruptcy Estates of 360networks (USA) Inc., for relief pursuant to Chapter 7 of the Bankruptcy Code.

37. A summons for the involuntary petition was issued on January 28, 2009. The summons was served on Dreier on January 30, 2009. An Order for Relief was entered on February 27, 2009.

38. By Notice of Appointment, dated March 2, 2009, Salvatore LaMonica, Esq. was appointed as the interim Chapter 7 Trustee of this estate and is currently acting in the capacity of permanent Chapter 7 Trustee.

### J. The Elliot Entities Transfer their Claims to Heathfield Capital Limited

39. On or about July 27, 2009, through a series of inter-company transactions, the Elliott Entities transferred their interest in the fictitious promissory notes, their rights under the Security Agreement, and all existing and future claims relating thereto to their affiliate, Heathfield. In particular, on or about July 27, 2009, Elliott Associates entered into a Note Purchase and Sale Agreement with Heathfield, pursuant to which Elliott Associates sold to Heathfield its interest in the fictitious promissory notes and assigned all of its rights in all existing and future claims relating thereto, including its rights under the Security Agreement. On or about July 27, 2009, Elliott International entered into a Contribution Agreement pursuant to which it contributed to Heathfield, as its wholly-owned subsidiary, Elliott International's interest in the fictitious promissory notes, and assigned all of its rights in all existing or future claims relating thereto, including its rights under the

Security Agreement. In its capacity as assignee, Heathfield has filed or will file a proof of claim in Dreier's chapter 7 case.

## FIRST CLAIM FOR RELIEF
## EXCEPTION TO DISCHARGE--FALSE PRETENSES, FALSE REPRESENTATIONS AND/OR ACTUAL FRAUD
### (11 U.S.C. § 523(a)(2)(A))

40. Heathfield incorporates by reference and realleges the allegations above as though fully set forth herein.

41. As set forth above, in order to induce the Elliott Entities to purchase the Notes, Dreier made numerous false and misleading representations of material fact, including without limitation the following misrepresentations:

   A. Dreier held himself out as a representative of the Solow Entities authorized to act on their behalf in connection with the purchase and sale of the Notes.

   B. Dreier produced and supplied, among other things, the following fabricated and forged documentation: (i) the Notes, (ii) the Legal Opinions, (iii) the Security Agreement, (iv) the Solow Guaranty, and (v) financial statements of the Solow Entities, knowing that the documents were entirely fictitious and had not been issued by the entities supposedly issuing them.

   C. Dreier, and certain co-conspirators at the direction of Dreier, engaged in impersonations of the supposed issuers and sellers of the Notes in order to persuade the Elliott Entities that the Notes were authentic.

   D. Dreier provided numerous misleading phone numbers to the Elliott Entities and set-up various fake email addresses in order to facilitate the impersonation of issuers and sellers of the Notes.

42. Dreier made these and other representations deliberately and while knowing that they were false and misleading.

43. Dreier made these representations with the intent to induce the Elliott Entities reliance thereon and to defraud the Elliott Entities. The Elliott Entities justifiably and detrimentally relied on Dreier's fictitious and misleading representations as set forth above.

44. As a direct and proximate result of Dreier's fictitious and misleading representations and the Elliott Entities justifiable reliance thereon, the Elliott Entities were damaged in an amount of no less than $101,102,745.55, including interest.

45. The above acts of Dreier serve to make this debt non-dischargeable pursuant to 11 U.S.C. §523(a)(2)(A) as the debt arises from Dreier's false pretenses, false representations and/or actual fraud.

## SECOND CLAIM FOR RELIEF
## EXCEPTION TO DISCHARGE--LARCENY
### (11 U.S.C. § 523(a)(4))

46. Heathfield incorporates by reference and realleges the allegations above as though fully set forth herein.

47. As set forth above, in order to induce the Elliott Entities to purchase the Promissory Notes, Dreier made numerous false and misleading representations of material fact, including without limitation the following misrepresentations:

A. Dreier held himself out as a representative of the Solow Entities authorized to act on their behalf in connection with the purchase and sale of the Notes.

B. Dreier produced and supplied, among other things, the following fabricated and forged documentation: (i) the Notes, (ii) the Legal Opinions, (iii) the Security Agreement, (iv) the Solow Guaranty, and (v) financial statements of the Solow

Entities knowing that the documents were entirely fictitious and had not been issued by the entities supposedly issuing them.

C. Dreier, and certain co-conspirators at the direction of Dreier, engaged in impersonations of the supposed issuers and sellers of the Notes in order to persuade the Elliott Entities that the Notes were authentic.

D. Dreier provided numerous misleading phone numbers to the Elliott Entities and set-up various fake email addresses in order to facilitate the impersonation of issuers and sellers of the Notes.

48. Dreier made these and other representations deliberately and while knowing that they were false and misleading.

49. Dreier made these representations with the intent to (i) unlawfully take the property of the Elliott Entities, (ii) permanently deprive the Elliott Entities of the possession of their property and (iii) convert the property for Dreier's own use without consent.

50. As a direct and proximate result of the deceit, Dreier wrongfully took property belonging to the Elliott Entities, causing damage to them in an amount of no less than $101,102,745.55, including interest.

51. The above acts of Dreier serve to make this debt non-dischargeable pursuant to 11 U.S.C. §523(a)(4) as the debt arises from larceny by Dreier.

### THIRD CLAIM FOR RELIEF
### EXCEPTION TO DISCHARGE—WILLFUL
### AND MALICIOUS INJURY THROUGH FRAUD
### (11 U.S.C. § 523(a)(6))

52. Heathfield incorporates by reference and realleges the allegations above as though fully set forth herein.

53. As set forth above, in order to induce the Elliott Entities to purchase the Notes, Dreier made numerous false and misleading representations of material fact, including without limitation the following misrepresentations:

   A. Dreier held himself out as a representative of the Solow Entities authorized to act on their behalf in connection with the purchase and sale of the Notes.

   B. Dreier produced and supplied, among other things, the following fabricated and forged documentation: (i) the Notes, (ii) the Legal Opinions, (iii) the Security Agreement, (iv) the Solow Guaranty, and (v) financial statements of the Solow Entities, knowing that the documents were entirely fictitious and had not been issued by the entities supposedly issuing them.

   C. Dreier, and certain co-conspirators at the direction of Dreier, engaged in impersonations of the supposed issuers and sellers of the Notes in order to persuade the Elliott Entities that the Notes were authentic.

   D. Dreier provided numerous misleading phone numbers to the Elliott Entities and set-up various fake email addresses in order to facilitate the impersonation of issuers and sellers of the Notes.

54. Dreier made these and other representations deliberately and while knowing that they were false and misleading.

55. Dreier made these representations with the intent to induce the Elliott Entities' reliance thereon and to permanently deprive the Elliot Entities of their property (i.e., the funds used to purchase the Notes).

56. Dreier acted with actual intent to harm the Elliot Entities.

57. Dreier willfully and maliciously caused injury to the Elliot Entities and to their property.

58. As a direct and proximate result of Dreier's false and misleading representations and the Elliot Entities' reliance thereon, the Elliot Entities were damaged in an amount of no less than $101,102,745.55, including interest.

59. Accordingly, the Court should except from discharge Dreier's debt to the Elliott Entities pursuant to 11 U.S.C. §523(a)(6).

## **REQUEST FOR RELIEF**

60. Plaintiff asks the Court for relief as follows:

(a) On the First, Second, and Third Claims for Relief, that the Court enter a non-dischargeable judgment against Dreier and in favor of Plaintiff for an amount to be determined at trial;

(b) For costs and reasonable attorney's fees according to proof; and

(c) For such other and further relief as the Court may deem just and proper.


Dated: November 30, 2009

*QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP*


By: *s/ Kevin S. Reed*
    *Kevin S. Reed*

*51 Madison Avenue*
*New York, New York 10010*
*Telephone: (212) 849-7000*
*Facsimile: (212) 849-7100*
*Email: kevinreed@quinnemanuel.com*

*Attorneys for Heathfield Capital Limited*